IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terry Lamont Brown, #941500, ) | |
| ) | Civil Action No. 6:04-21859-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Lexington County Detention Center; ) | |
| Captain Williams; Major Harris; ) | |
| L.T. Garrison; and Sgt. Hare, ) | |
| ) | |
| Defendants. ) | |
| ) | |

       The plaintiff, a state pretrial detainee proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion for summary judgment.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

       The plaintiff filed his complaint on August 25, 2004, alleging that the defendants violated his constitutional rights. On November 4, 2004, the plaintiff filed a motion for appointment of counsel; on February 25, 2005, he filed an affidavit in support of this motion.[1] On January 20, 2005, the defendants filed a motion for summary judgment. By order filed on January 28, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response to the defendants' motion on February 25, 2005.

---

[1] The motion for appointment of counsel is denied by order filed simultaneously herewith.

**APPLICABLE LAW**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect

2

the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## FACTUAL BACKGROUND

This action is premised on the plaintiff's detainment at the Lexington County Detention Center (LCDC) where he was booked on November 15, 2003, on numerous charges, including kidnaping, burglary, and assault and battery with intent to kill (def. mem. ex. A; Williams aff. ¶ 4).

On or about January 14, 2004, the plaintiff claims he was attacked by three inmates while he was in the third floor recreation area at the LCDC. He claims that inmate Kevin Mercer used a "jail made" knife – made with a toothbrush and razor blade – to cut the plaintiff's face repeatedly. The plaintiff was treated for his wounds at the Lexington Medical Center and released to the LCDC. He did not require continuing medical care.

## ANALYSIS

*Security*

The plaintiff has accused the defendants of "lack of security" and "neglect of security" when he was allegedly attacked with a "jail-made" knife by another inmate. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Accordingly, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)). "It is not, however, every injury suffered

by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, the Eighth Amendment is violated only when the plaintiff demonstrates (1) that he was incarcerated under conditions posing substantial risk of serious harm and (2) that the officials displayed "deliberate indifference" to his safety. *Id.*

Here, the plaintiff cannot establish that he was incarcerated under conditions posing substantial risk of serious harm. The plaintiff claims that "[i]f the officers here were doing there [sic] jobs properly they would have found the knife during a previous shake down (or searching the inmate's cell)" (pl. aff. ¶ 6). The defendants claim that the weapon with which the plaintiff claims he was attacked was never found, even after the entire LCDC was searched for weapons and contraband (Garrison aff. ¶¶ 7-8; Hare aff. ¶¶ 7-8). Moreover, defendant Hare, a sergeant at the LCDC, testified that not only are fights at the LCDC rare, but that this is the only altercation in the six years that she has been a supervisor in which an inmate allegedly attacked another inmate with a "shank" or homemade weapon (Hare aff. ¶¶ 5-6). These conditions simply did not pose a substantial risk of serious harm to the plaintiff.

Similarly, this court cannot conclude that the defendants acted with "deliberate indifference" to a risk of violence by Kevin Mercer. Indeed, beyond the simple fact that Mercer was being detained on a murder charge, the plaintiff offers no evidence that the defendants knew or should have known that Kevin Mercer posed a risk to the plaintiff's safety. The defendants have confirmed that there was no prior warning that there would be an attack by Mercer and other inmates (Williams aff. ¶ 9; Hare aff. ¶ 9). Although the plaintiff also claims that the officers delayed in responding to the attack, he offers no evidence to establish this allegation. His complaint alleges that the matter was under control within 7-10 minutes (compl. IV). The defendants have testified that they responded as quickly as possible to the attack and that the incident ended quickly (Garrison aff. ¶ 6; Williams aff. ¶ 9). Under these circumstances, the plaintiff cannot establish a violation of the Eighth Amendment. *See Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

4

*Exhaustion of Administrative Remedies*

The defendants also argue that the plaintiff's claims should be dismissed based upon the plaintiff's alleged failure to exhaust his administrative remedies as required by Title 42, United States Code, Section 1997e.

The Prison Litigation Reform Act (PLRA) amended 42 U.S.C. §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Accordingly, before plaintiffs may proceed with their claims in this court, they must first exhaust administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court has held that this section requires an inmate challenging his conditions of confinement to exhaust all administrative remedies before filing an action in district court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory").

The evidence in the record reveals that the plaintiff has not completed the administrative remedy process as to his claims in this action (compl. II). The LCDC has an administrative grievance procedure to handle disputes, but the plaintiff did not file a grievance pursuant to that process (compl. II; Williams aff. ¶¶ 6-7). Thus, it appears that the plaintiff did not exhaust his administrative remedies and that his claims should be dismissed on this ground.

*Detention Center*

The Lexington County Detention Center is a group of buildings or a facility. Inanimate objects, such as buildings, facilities, and grounds, do not act under color of state law. Hence, the LCDC is not a "person" subject to suit under 42 U.S.C. §1983. *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999), *vacated on other grounds by* 203 F.3d 821 (4th

Cir. 2000) ("the Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983").

*Qualified Immunity*

The defendants have also raised the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S.Ct. 2727 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[2]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . .

---

[2] In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell*, 472 U.S. at 526).

[which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000).  Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights.  Therefore, the defendants are entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, it is recommended that the defendants' motion for summary judgment be granted.

                                      s/William M. Catoe
                                      United States Magistrate Judge

July 13, 2005
Greenville, South Carolina